IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICK G. MAGNO,                          )
                                        )
            Plaintiff,                  )
                                        )
      vs.                               )   Civil Action No. 08-1543
                                        )
MICHAEL J. ASTRUE,                      )
COMMISSIONER OF SOCIAL SECURITY,        )
                                        )
            Defendant.                  )

O R D E R

        AND   NOW,   this   27th day of January, 2010, upon

consideration Defendant's Motion for Summary Judgment (Doc. No. 13)

filed in the above-captioned matter on April 27, 2009,

        IT IS HEREBY ORDERED that said Motion is DENIED.

        AND, further, upon consideration of Plaintiff's Motion for

Summary Judgment (Doc. No. 11) filed in the above-captioned matter

on March 26, 2009,

        IT IS HEREBY ORDERED that said Motion is GRANTED in part

and DENIED in part.  Specifically, Plaintiff's Motion is granted to

the extent that it seeks a remand to the Commissioner of Social

Security ("Commissioner") for further evaluation as set forth below

and denied in all other respects.  Accordingly, this matter is

hereby remanded to the Commissioner for further evaluation under

sentence four of 42 U.S.C. § 504(g) in light of this Order.

1

I.        **Background**

          In November of 2003, Plaintiff, Nick G. Magno, filed a
claim for Disability Insurance Benefits ("DIB") under Title II of
the Social Security Act, 42 U.S.C. §§ 401-434.  Specifically, he
claimed that he became disabled on October 9, 2000, due to low heart
rate, weakness, dizziness, light-headedness, blurred vision, and
panic attacks.  (R. 775-82, 791).    His application was denied
initially by the Commissioner on April 28, 2004.  (R. 459, 756-60).
He made a timely request for a hearing before an Administrative Law
Judge ("ALJ"), and a hearing was held on September 27, 2005.  (R.
1307-27).  In a decision dated November 18, 2005, the ALJ denied
Plaintiff's request for benefits.  (R. 1080-88).  On October 27,
2006, the Appeals Council granted Plaintiff's request for a review
on several different grounds, and remanded for a rehearing before
the ALJ which was heard on January 24, 2007.  (R. 1090-93, 1265-
1306).  Plaintiff had filed a subsequent application for benefits on
January 5, 2006 (R. 1099), which the Appeals Council found to be
duplicative of the first application, and it ordered the ALJ to
associate the claim files and issue a new decision on the associated
claims.  (R. 1092).  The ALJ issued his second decision on March 22,
2007, again denying Plaintiff's claims.  (R. 459-70).  The Appeals
Council declined further review of the ALJ's decision.  (R. 449-52).
On November 5, 2008, Plaintiff filed a timely appeal with this

Court, and the parties have filed cross-motions for summary judgment.

Plaintiff has applied for Social Security disability benefits on two previous occasions that are documented in the record. The first such application was on June 22, 2001. (R. 13, 93). This application was denied initially, and after a timely request, a hearing was held before an ALJ on April 24, 2002. (R. 27-49). The ALJ denied this application in a decision dated June 27, 2002, and the Appeals Council denied further review. (R. 10-19, 5-6). Plaintiff's appeal to the United States District Court for the Western District of Pennsylvania was denied by the Honorable Joy Flowers Conti on March 19, 2004. See Magno v. Commissioner of Social Security, CA 03-122 (W.D. Pa. March 19, 2004).

Plaintiff's second prior application was on July 8, 2002, which the Commissioner also denied initially. (R. 514-15, 733). A hearing before an ALJ was held on July 15, 2003 (R. 1328-50), who subsequently denied Plaintiff's application in a decision dated September 26, 2003. (R. 733-40). The Appeals Council denied Plaintiff's request for review. (R. 752-55).[1]

---

[1]    There appears to be some confusion concerning the final disposition of the second prior application. The ALJ's decision in the current case states that the second prior application was appealed to the Western District. (R. 459-60). The Defendant's Brief likewise states that the second prior application was appealed as Magno v. Commissioner, at the citation set forth above for the appeal of the first prior application. (Doc. No. 14 at 4). Neither the ALJ nor Defendant make any mention of the first prior application. The record is clear, however, that the action at Magno v. Commissioner was an appeal of the first prior application denied
(continued...)

## II.     **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by

---

[1](...continued)
by the ALJ on June 27, 2002. Indeed, the complaint in that case was filed long before the ALJ's decision as to Plaintiff's second prior application was even issued. There appears to have been no appeal to the district court of the second prior application denied by the ALJ on September 26, 2003.

countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d
Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir.
1983)). "Nor is evidence substantial if it is overwhelmed by other
evidence - particularly certain types of evidence (e.g., that
offered by treating physicians) - or if it really constitutes not
evidence but mere conclusion." Id.

          A disability is established when the claimant can
demonstrate some medically determinable basis for an impairment that
prevents him or her from engaging in any substantial gainful
activity for a statutory twelve-month period. See Fargnoli v.
Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is
considered unable to engage in any substantial gainful activity
'only if his physical or mental impairment or impairments are of
such severity that he is not only unable to do his previous work but
cannot, considering his age, education, and work experience, engage
in any other kind of substantial gainful work which exists in the
national economy ....'"    Id. at 39 (quoting 42 U.S.C. §
423(d)(2)(A)).

          The Social Security Administration ("SSA") has promulgated
regulations incorporating a five-step sequential evaluation process
for determining whether a claimant is under a disability as defined
by the Act.    See 20 C.F.R. § 404.1520.    At Step One, the
Commissioner must determine whether the claimant is currently
engaging in substantial gainful activity.    See 20 C.F.R. §

404.1520(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. § 404.1520(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 404.1520(g). In making this determination, the ALJ should consider the claimant's RFC, his or her age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.

## III.     The ALJ's Decision

In the present case, the ALJ gave res judicata effect to the prior decision by the Commissioner dated September 26, 2003, and therefore determined that the earliest onset date for consideration for purposes of this claim was September 27, 2003, in spite of Plaintiff's allegations of an onset date of October 9, 2000. (R. 462). The ALJ also determined that Plaintiff's insured status under the Social Security Act ended on March 31, 2006. (R. 461). Therefore, in order to establish eligibility for benefits, Plaintiff must show that he was disabled during the period between September 27, 2003, and March 31, 2006. The ALJ adopted by reference the prior ALJ's findings in the September 26, 2003 decision concerning those exhibits which had been admitted in evidence in the prior proceeding. (R. 462).

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. The ALJ first determined that Plaintiff did not engage in substantial gainful activity during the eligibility period. (R. 462). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had the severe impairments of peptic ulcer disease with duodenitis, obesity, sinus bradycardia, hypertension, anxiety with panic attacks, and depression. He found, however, that Plaintiff's gastroesophageal reflux disease, shortness of breath, left shoulder pain, and mild hearing loss did not constitute severe impairments. (Id.). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 462-63).

At Step Four, the ALJ made the following RFC determination:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to sit up to six hours in an eight-hour work day, stand and walk up to six hours in an eight-hour workday, and lift weights of up to twenty pounds frequently and fifty pounds occasionally, i.e., he can perform the exertional demands of medium work despite his obesity, hypertension and sinus bradycardia. From a nonexertional standpoint, due to dizziness and lightheadedness due to either sinus bradycardia or anxiety, the claimant was obliged, on and prior to the date last insured, to avoid

8

exposure to hazards such as heights and
moving machinery. Due to his
psychiatric conditions, he was limited
to jobs that do not involve intensive
supervision, work-setting changes,
interaction with the general public,
making decisions on-the-job, working
closely with co-workers, and performing
tasks at a competitive production rate.
He was able to understand, remember,
and carry out short, simple
instructions.

(R. 463-68). Based on this RFC, Plaintiff established that he is
incapable of returning to his past relevant work as an asphalt
laborer, steel mill laborer, and general laborer, since these jobs
required close supervision; therefore, the ALJ moved on to Step
Five. (R. 468).

The ALJ used a vocational expert ("VE") to determine
whether or not there were a significant number of jobs in the
national economy that Plaintiff could perform. The VE testified
that, based on Plaintiff's age, education, past relevant work
experience, and RFC, Plaintiff could perform jobs, including laundry
worker, janitor, and stock clerk, that exist in significant numbers
in the economy. (R. 469-70). Accordingly, the ALJ found that
Plaintiff was not disabled. (R. 470).

IV.     **Legal Analysis**

Plaintiff raises several arguments as to why the ALJ erred
in finding that he was not disabled based on his mental impairments.
While the Court does not find merit in all of the arguments raised
by Plaintiff, it does agree that substantial evidence does not

9

support the ALJ's decision and that the ALJ did not apply the proper
legal standards in rendering his decision.  Specifically, the Court
finds that the record is insufficient as to whether proper weight
was given to the opinion of Licensed Social Worker ("LSW") Sydney
Paul in this case and that the ALJ did not apply the proper legal
standards in making this determination.  Accordingly, the Court will
remand the case for further consideration.

Sydney Paul is an LSW with whom Plaintiff treated on
numerous occasions from April of 2004 through December of 2006.  (R.
1068-73, 1253-55).  As the ALJ recognized in his decision, Mr. Paul
opined, in a September 7, 2004 report, "that the claimant was unable
to concentrate, and rated his ability to perform unskilled work as
fair to poor except for handling very short and simple instructions
and maintaining regular attendance."  (R. 465, 1049-50).  Mr. Paul
further opined that Plaintiff's impairments and treatment would
result in work absences of more than three times per month and that
he had only a fair ability to complete a normal workday or work week
without interruptions from psychologically based symptoms.  (Id.).
The ALJ considered Mr. Paul's opinion and discussed it at some
length, but gave it "limited weight" because Mr. Paul is neither a
psychologist nor a psychiatrist.  (R. 466).

As an LSW, rather than a psychologist or a psychiatric
doctor, Mr. Paul is not considered an "acceptable medical source"
within the meaning of the regulations; rather, he falls under the

10

category of an "other source."  20 C.F.R. §§ 404.1513(a) and (d).
As such, while his opinion may be used to show the severity of a
claimant's impairment and how it affects his or her ability to work,
it may not be used to establish the existence of said impairment.
See id.  At the time the ALJ issued his initial decision in this
case, it was not entirely clear how to determine the weight to be
given to the opinions of such other sources.  However, acknowledging
that with the growth of managed health care and the emphasis on
containing medical costs, other medical professionals, such as
licensed social workers, are often filling the roles that would
otherwise be taken by acceptable medical sources, the SSA
promulgated Social Security Ruling (SSR) 06-03p in August of 2006,
to clarify how evidence presented by such sources should be
evaluated.  See SSR 06-03p, 2006 WL 2329939 (S.S.A.), at *1, *3
(2006).[2]

        According to SSR 06-03p, the fact than an opinion comes
from an acceptable medical source may be a reason for giving that
opinion greater weight.  See id. at *5.  However, other medical
source evidence may outweigh the opinion of acceptable medical
sources under certain circumstances.  The SSR adopts the guidelines
set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) for weighing

---

[2]     An SSR, once issued, becomes binding authority on the SSA's
administrative law judges. See Heckler v. Edwards, 465 U.S. 870, 874 n.3
(1984); Walton v. Halter, 243 F.3d 703, 708 (3d Cir. 2001); 20 C.F.R. §
402.35(b)(1).

the evidence of acceptable medical sources as general guidelines for
weighing the evidence of "other sources" as well.  <u>See</u> <u>id.</u> at *4.
Among the factors ALJs are to consider are:

- How long the source has known and how frequently the
source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant
evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise
related to the individual's impairment(s); and
- Any other factors that tend to support or refute the
opinion.

<u>Id.</u>

        In his decision, the ALJ makes no mention of SSR 06-03p,
nor does he engage in the analysis set forth therein.   Instead, as
discussed above, the sole explicit reason he gives for assigning Mr.
Paul's opinion limited weight was that Mr. Paul was neither a
psychologist nor a psychiatrist, i.e., that he was not an acceptable
medical source.[3]  He does not, for example, discuss the fact that
Mr. Paul had the opportunity to observe Plaintiff more frequently
than any other treating mental health professional mentioned in the
record.   (R. 1068-73, 1253-55).   Likewise, he does not discuss Mr.
Paul's specialty or how well the opinion was supported or explained.

---

[3]     The Court notes that the ALJ does point out some inconsistencies
between Mr. Paul's opinion and the treatment regimen prescribed by Dr.
Shoukry Matta, M.D., as well as Dr. Matta's reports, but he does not
expressly rely on any such inconsistencies in giving Mr. Paul's opinion
limited weight.   Regardless, in any event, the ALJ failed to properly
weigh the relevant factors applicable to this case as directed by SSR 06-
03p.

Accordingly, the record is insufficient to determine whether the ALJ properly weighed Mr. Paul's opinion.

As noted, SSR 06-03p was issued in August of 2006. Although this was before the ALJ's most recent decision in this case, it was subsequent to his initial decision in November of 2005. As the remand of the initial decision did not specifically pertain to the ALJ's treatment of Mr. Paul's opinion, the ALJ appears to have essentially adopted his rationale for weighing Mr. Paul's opinion set forth in the initial decision in the subsequent one. Therefore, the fact that SSR 06-03p was issued in the midst of this case seems to have gone unnoticed.

The weight given to Mr. Paul's opinion is relevant for several reasons. First, giving more weight to his opinion could obviously impact the ALJ's RFC determination. Perhaps even more importantly, though, Mr. Paul, as noted, indicated that Plaintiff could be expected to routinely miss three or more days of work a month because of his mental impairments. (R. 1049-50). The VE at each of the two hearings in this case testified that if Plaintiff were to routinely miss three or more days of work a month, it would preclude Plaintiff from working at any job available in the economy. (R. 1305, 1326). On remand, the ALJ should specify whether he is

accepting or rejecting Mr. Paul's contention regarding Plaintiff's work attendance and the basis for his decision.[4]

The ALJ is not required to accept Mr. Paul's opinion regarding Plaintiff's limitations and work attendance, but he is required to adequately discuss the reason for weighing it as he has. Indeed, SSR 06-03p makes it clear that the fact than an opinion comes from an acceptable medical source may be a reason for giving that opinion greater weight. The Court expresses no opinion as to what weight should ultimately be given to Mr. Paul's opinion; it remands so that SSR 06-03p can be applied in making this determination.

Although Plaintiff raises other arguments, the Court does not reach these because it has already found a remand warranted and because the record does not allow the Court to reverse the ALJ's decision and award benefits, as the Court cannot find that substantial evidence in the record as a whole indicates that Plaintiff is disabled and entitled to benefits.[5] See Podedworny v.

---

[4]     The Court further notes that one of Plaintiff's treating physicians, Dr. Jerzy Magda, M.D., also found, in a report dated May 24, 2004, that Plaintiff's impairments and treatment would result in work absences of more than three times per month.  (R. 1039).  The ALJ does not address this finding, or the impact of Dr. Magda's later report dated March 1, 2006 (R. 1201-05) relied upon by Defendant.

[5]     The Court notes that the letter from Dr. Matta, one of Plaintiff's treating psychiatrists, issued more than a year after the end of Plaintiff's insured period, was not in evidence before the ALJ, but was submitted to the Appeals Council when it declined review.  (R. 452, 1258, 1262-64).   It is well-established that if the Appeals Council denies review, the ALJ's decision is the Commissioner's final decision.   See
                                                            (continued...)

<u>Harris</u>, 745 F.2d 210, 221-22 (3d Cir. 1984). The Court is mindful that this case has now been pending for many years, and hopes that the Commissioner can dispose of the case in a timely manner on remand.[6]

**V.        Conclusion**

In short, the record simply does not permit the Court to determine whether the ALJ gave appropriate weight to the Mr. Paul's opinion in this case, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this

---

[5](...continued)
<u>Matthews v. Apfel</u>, 239 F.3d 589, 592 (3d Cir. 2001). Evidence not admitted before the ALJ cannot be used to argue that an ALJ's determinations lack the support of substantial evidence. <u>See id.</u> at 594. Accordingly, the Court cannot rely on this letter in making its determination here. Of course, the Court can remand a case on the basis of new evidence under 42 U.S.C. § 405(g) if the evidence is new and material and the plaintiff has demonstrated good cause for not having incorporated the new evidence into the administrative record. <u>See id.</u>; <u>Szubak v. Secretary of Health & Human Services</u>, 745 F.2d 831, 833 (3d Cir. 1984). The Court is already remanding the case, though, so remand on this basis is not necessary. The ALJ can determine the materiality of this evidence upon remand, although, as noted, the letter was written long after the insured period had ended. <u>See Szubak</u>, 745 F.2d at 833 (explaining that "[a]n implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of . . . a subsequent deterioration of [a] previously non-disabling condition").

[6]      Of course, on remand, the ALJ should be conscious of the other issues raised by Plaintiff regarding the weighing of medical evidence, evaluation of his activities of daily living, and credibility determinations. In this regard, the Court does note that it is not entirely clear how much Dr. Suzanne Houk, Ph.D.'s opinion (R. 1246-51) was influenced by Plaintiff's claims of hallucinations, as found by the ALJ. The record should be clarified as to the effect of Plaintiff's claims of hallucinations on Dr. Houk's findings and on the issue of whether her opinion relates back to the insured period. In so doing, the ALJ must not draw his own medical conclusions based on credibility determinations and only those parts of the report that support his determination. <u>See</u> <u>Morales v. Apfel</u>, 225 F.3d 310, 318 (3d Cir. 2000).

case.   Likewise, the Court finds that the ALJ did not apply proper legal standards in making this determination.   The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

                                        s/Alan N. Bloch
                                        United States District Judge

ecf:       Counsel of record